IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN PARKS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-0562 |
| WOODBRIDGE GOLF CLUB, INC., | : | |
| ET AL. | : | |
| | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                               **JULY 22, 2016**

Presently before the Court is Defendants' Motion for Partial Summary Judgment. (ECF No. 17.) For the following reasons, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

   **A.    Factual Background[1]**

Plaintiff Megan Parks filed this action with regard to events that occurred at a golf club located near Kutztown, Pennsylvania. The eighteen-hole golf club is owned and managed by Defendant Woodbridge Golf Club, Inc.[2] Plaintiff worked at Woodbridge from April 2008 through November 2008 and from May 2009 through July 25, 2009. (Am. Compl. ¶ 14, ECF No. 10.) Plaintiff alleges that Thor Shaffer, her supervisor, subjected her to a hostile work environment. (*Id.*) Specifically, Plaintiff claims that Shaffer asked Plaintiff for sexual favors,

---

[1] We view of all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

[2] Woodbridge Golf Club is an entity managed by Woodbridge Golf Club, Inc., a Pennsylvania business corporation. We use "Woodbridge" to refer to the club, and will refer to "Defendant Woodbridge" when discussing the corporate entity.

discussed an array of lewd desires, and made inappropriate remarks regarding her body parts. (*Id*.) In addition, Plaintiff alleges that Shaffer harrassed her in a sexually degrading manner, groped her, and repeatedly attempted to physically restrain her. (*Id*.) Plaintiff claims to have suffered physical injury, mental anguish, and financial loss as a result of Shaffer's actions. (*Id*. at ¶¶ 22-25.)

Plaintiff also alleges that Defendants Helen Filippini, Carl Zettlemoyer, and Marlowe Graff were responsible for the hostile work environment and discriminatory employment practices in place at the golf club. (*Id*. at ¶¶ 14-15.) Filippini is a part owner of the corporation, having inherited her deceased husband's share. However, she claims to have "no involvement with the corporate decision making and everyday operations" of the club. (Answer ¶ 8, ECF No. 12.) Zettlemoyer is a corporate shareholder and officer and serves as Vice President of the corporation. (Graff Dep. 35, Resp. Ex. C, ECF No. 20.) Graff is an owner and secretary-treasurer of the corporation and has managed the club since 2007. (Answer ¶¶ 9-10; Graff Dep. 6, 11, 35.) Plaintiff alleges that Graff and the other Woodbridge employees were aware of the harassment Shaffer subjected her to but minimized its seriousness. (Am. Compl. ¶ 14.) Graff is the only owner who is involved in the club's day-to-day operations. (Graff Aff. ¶ 4, Defs.' Summ. J. Br. Ex. F, ECF No. 18.)

**B.    Procedural History**

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (PHRC) on August 29, 2009. (PHRC Compl., Defs.' Summ. J. Br. Ex. E.) Plaintiff simultaneously filed a complaint with the Equal Employment Opportunity Commission (EEOC). (*See* EEOC Compl., Defs.' Summ. J. Br. Ex. E.) In September 2010, the PHRC terminated the investigation, finding

that the facts did "not establish that probable cause exists to credit the allegations of unlawful discrimination." (PHRC Compl. 8.) The EEOC terminated its investigation in October 2010, informing Plaintiff of her right to sue under Title VII. (*Id*. at 7.)

Plaintiff filed a Complaint on January 26, 2011.[3] An Amended Complaint was filed on June 13, 2011. The Amended Complaint alleges a Title VII claim and assorted state law claims. Defendants filed an Answer on June 28, 2011. On August 29, 2011, Defendants filed the instant Motion for Partial Summary Judgment (Defs.' Summ. J. Mot., ECF No. 17). On September 22, 2011, Defendants filed a Supplemental Brief in Support of Defendants' Motion for Partial Summary Judgment. (Supp. Summ J. Br., ECF No. 19.) Plaintiff filed a Response on September 23, 2011. (Resp., ECF No. 20.) Defendants seek summary judgment on Count I of the Amended Complaint on the grounds that Woodbridge is not an "employer" within the statutory definition of Title VII. Defendants also seek summary judgment in favor of Filippini, Zettlemoyer, and Graff on all counts, on the grounds that federal and Pennsylvania law precludes their personal liability as officers of Woodbridge.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

---

[3] Plaintiff also filed a complaint in the Court of Common Pleas of Berks County against Thor Shaffer alleging injury and damages based upon the same conduct.

248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*.  The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III.  DISCUSSION

### A.  Defendant Woodbridge's Status as an "Employer" Under Title VII

The crux of the present dispute is whether Woodbridge had the minimum number of employees required to be subject to liability under Title VII.  Defendant Woodbridge argues that

it is not an "employer" within the meaning of that term in Title VII, because it did not employ a sufficient number of employees during the years in question. (Defs.' Summ. J. Br. 7-8.) Plaintiff responds that Woodbridge employed the requisite number of employees, and thus is an eligible employer under Title VII. (Resp. Br. 8.)

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Act applies only to employers who have "fifteen or more employees for each working day in each of twenty or more calendar weeks" during the calendar year in which the action arose or in the preceding calendar year. 42 U.S.C. § 2000e(b). Title VII's numerical threshold is a substantive element of Plaintiff's claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) ("[T]he employee-numerosity requirement relates to the substantive adequacy of [a] Title VII claim . . . .") Since Plaintiff's action arose in 2008 and 2009, the current and preceding years are 2007, 2008, and 2009. (Resp. Br. 4.) Therefore, Defendant Woodbridge can be liable under Title VII only if it has maintained an employment relationship with at least fifteen people on each of its working days for at least twenty weeks during one of the years at issue.

For purposes of Title VII, a business has an employee if the business maintains an employment relationship with that individual. *See, e.g.*, *Walters v. Metropolitan Educ. Enterprises, Inc.*, 519 U.S. 202 (1997). In *Walters*, the U.S. Supreme Court held that the "payroll method" is the proper way of determining "whether the employer has an employment relationship" with an individual. *Id.* at 212. The Court explained that "the employment

relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id*. at 206. Under the "payroll method," we must "look first and primarily to whether the individual in question appears on [Defendant Woodbridge's] payroll." *Id.* at 211. We are satisfied after carefully applying the principles set forth in *Walters* that Defendant Woodbridge does qualify as an employer under Title VII.

Woodbridge does not routinely operate on a traditional five-day, Monday through Friday workweek. Instead, when the weather permits, the golf club opens for operation each day of the week. (*See* Graff Dep. 40-41.) During discovery, Defendants identified twenty-nine individuals who worked for Woodbridge during various times in 2007, 2008, and 2009. (Payroll Summary, Resp. Br. Ex. A; Defs.' Resp. Interrogs. Ex. G, Defs.' Summ. J. Br.) Plaintiff claims that, in 2008, Defendant maintained an employment relationship with twenty-one of these individuals for twenty weeks or more. (Resp. Br. 10-11.) Defendant Woodbridge alleges that only ten individuals were employed for twenty weeks or more. (Defs.' Summ. J. Br. 3-4.) Title VII's employee-numerosity threshold is met if Woodbridge employed at least fifteen people during each of its working days for at least twenty weeks of the year. Therefore, any calendar week in 2008 during which Woodbridge did not employ at least fifteen people on *each* of its working days is not counted under the analysis here.[4] "[A]ll one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so,

---

[4] This is consistent with the EEOC's policy. The Commission's Compliance Manual instructs that "[i]n determining whether the 20-week requirement is met, only calendar weeks when the employer had the requisite number of employees for each workday of that week are counted." *See* EEOC Compliance Manual, Section Two, subpart 2–III, Section B 1, https://www.eeoc.gov/policy/docs/threshold.html#2-III (July 15, 2016) (near footnote 102).

when.  He is counted as an employee for each working day after arrival and before departure." *Walters*, 519 U.S. at 211.

Defendants identified twenty-eight individuals who worked at Woodbridge during various points in 2008 and 2009.  (*See* Payroll Summary.)  Plaintiff claims that twenty-one of these twenty-eight employees were employed on each working day for twenty weeks or more in 2008.  (Resp. Br. 10-11.)  The record demonstrates that Defendant Woodbridge meets Title VII's numerosity requirement.  During the week of April 20, 2008, Woodbridge had seventeen employees on its payroll.[5]  (*See* Payroll Summary.)  Between the weeks of April 20 and May 11, 2011, Woodbridge added two additional individuals to its payroll without removing any—bringing its employee total to nineteen.  (*Id*.)  Then, during the week of June 1st, Woodbridge added an additional employee to its payroll and removed another—keeping nineteen people on its payroll.  (*Id*.)  An employee was added during the week of June 22nd.  (*Id*.)  During the week of June 19th, Woodbridge added one individual to its payroll and removed another.  (*Id*.)  During the week of July 13th, Woodbridge added another individual to the payroll.  (*Id*.)  Then during the week of July 20th, the golf club removed an employee from the payroll—leaving the total number of employees at twenty.  (*Id*.)  Another employee was added to the club's payroll during the week of July 27th, while a different individual was removed during the very next week.  (*Id*.)  Two individuals were later removed from the payroll during the week of August 17th, which brought the total number of employees on the payroll to eighteen.  (*Id*.)  During the week of

---

[5] These employees are:  Aaron Scheffey, Adam DaCosta, Andy Keim, Charles Smith, Diane Graff, Ethan Zettlemoyer, Frederick Moyer, Gregory Suranofsky, James Wade, James McNeil, Kevin Scanlon, Lucille Zettlemoyer, Nancy Rabenold, Nicholas Curry, Ramon Bruno, Thor Schaffer, and Travis Massini.  (*See* Payroll Summary, Pl.'s Resp. Ex. A.)

August 24th, Woodbridge again removed one individual and added another to the payroll—leaving the total at eighteen.  (*Id*.)  And finally, during the week of September 7th, one individual was removed from the payroll, bringing the final number of individuals appearing on Woodbridge's payroll to seventeen.[6]  (*Id*.)  As demonstrated in the record, between April 20, 2008 and September 7, 2008, Woodbridge maintained between seventeen and twenty-one employees on its payroll for each of the twenty calendar weeks.  (*See id*.)  Since Defendant Woodbridge did not have less than fifteen employees at any point during this twenty-week period, Defendant qualifies as an employer under Title VII.[7]

Defendants argue that many of the above-mentioned individuals were seasonal employees who worked on a limited, as-needed basis even though they remained on Woodbridge's payroll from year to year.  (Graff Aff. ¶¶ 11-14.)  They argue that the seasonal nature of these employment relationships proves that the employees in question were not

---

[6] Woodbridge added and removed the following employees from its payroll between April 20, 2008, and September 13, 2008:  Kelsey Pagatto (added on the week of April 27, 2008); Heather Parks (added on the week of May 11, 2008); Gregory Suranofsky (removed during the week of May 18, 2008); Dale Kohler (added on the week of June 1, 2008); Kelsey Pagotto (removed during the week of June 1, 2008); Brett Hauck (added on the week of June 22, 2008); Ethan Zettlemoyer (removed during the week of June 29, 2008); Kyle Stoudt (added on the week of June 29, 2008); Erik Carl (added on the week of July 6, 2008); Bruce Hall (added on the week of July 13, 2008); Frederick Moyer (removed during the week of July 20, 2008); Douglas Billig (added on the week of July 27, 2008); Douglas Billig (removed during the week of August 3, 2008); Heather Parks (removed during the week of August 17, 2008); Dale Kohler (removed during the week of August 17, 2008); Adam DaCosta (removed during the week of August 24, 2008); Curtis Sheetz (added on the week of August 24, 2008); Charles Smith (removed during the week of  September 7, 2008).  (Payroll Summary, Pl.'s Resp. Ex. A.)

[7] The record before the court regarding the number of individuals who were on Defendant Woodbridge's payroll in 2007 and 2009 is sparse.  However, we need not consider whether Defendants met the fifteen-employee threshold in 2007 or 2009—the other "current" and "preceding" calendar years—since we have determined that that Defendant Woodbridge satisfied

employed for more than twenty "consecutive" weeks each year. (*Id.* ¶ 2.) Defendants have not identified any authority supporting this argument, and we are aware of none. Neither the Supreme Court nor the Third Circuit has required courts to read a "consecutive" element into Title VII's twenty week requirement. *See also Pawlowski v. Scherbenske*, 891 F. Supp. 2d 1077, 1087 (D.S.D. 2012) ("[T]he 20 weeks need not be consecutive."). Moreover, Defendants' approach invites us to analyze Woodbridge's records to determine whether each employee was actually working at the golf club on each day in question. Such a method would turn the "determination into [the] incredibly complex and expensive factual inquiry" that the Supreme Court cautioned against. *Walters*, 519 U.S. at 211. In *Walters*, the defendants made an argument that is strikingly similar to the one that Defendants make here: individuals do not qualify as employees under Title VII during any day for which they did not receive compensation or actually perform work. *Id.* at 208-211. Noting that "few employers keep daily attendance records," the Supreme Court rejected this method as "impossible to administer." *Id.* at 208. In addition, the Supreme Court was acutely aware of the fact that under the payroll method, "an employee who works irregular [(*e.g.*, seasonal)] hours, perhaps only a few days a month, will be counted toward the fifteen-employee minimum for every week in the month." *Walters*, 519 U.S. at 210. We reject Defendants' argument.

Although we look "first and primarily to whether the individual in question appears on the employer's payroll," *Walters* recognized that the mere fact that an individual is on the payroll is not necessarily dispositive of his or her status as an employee. 519 U.S. at 211. The Court stressed that it is "the existence of an employment relationship, not appearance on the payroll,"

---

the threshold in 2008.

that is the "ultimate touchstone," because an individual may appear on the payroll but nevertheless not be "an 'employee' under traditional principles of agency law." *Id.* (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-34 (1992)). The parties have not suggested that the individuals in question here do not qualify as employees under traditional principles of common law. Accordingly, Defendants' Motion for Partial Summary Judgment will be denied with respect to Count I.

### B. Individual Defendants and Personal Liability

Addressing next Defendants' claim that Defendants Filippini, Zettlemoyer, and Graff cannot be held liable as to any of Plaintiff's allegations because the individual defendants are protected from personal liability by the corporate veil. Defendants argue that Plaintiff's allegations against these named defendants should be dismissed because they "do not satisfy any criteria that would allow individual liability for shareholders." (Defs.' Summ. J. Br. 9.) In response, Plaintiff claims that she has not attempted to pierce the golf club's corporate veil because the three defendants registered a separate entity under a fictitious name. (Resp. 11-12.)

"A duly organized business corporation enjoys an identity separate and apart from its stockholders, directors, and officers." *Gottlieb v. Sandia Amer. Corp.*, 452 F.2d 510, 514 (3d Cir. 1971). As such, individuals do not bear personal liability for the malfeasance or torts of a corporation. *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). "In the absence of extraordinary circumstances, a court will not disregard the corporate fiction [to] hold a stockholder liable for the torts of the corporation." *Zubik v. Zubik*, 384 F.2d 267, 273 n.14 (3d Cir. 1967). Piercing the corporate veil "is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal

assets liable for the debts of the corporation." *Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003). Courts generally apply this remedy in order to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Pearson*, 247 F.3d at 484-85 (3d Cir. 2001).

The Third Circuit has not created a rigid test that courts should use when determining whether the corporate veil should be pierced. *Lutyk*, 332 F.3d at 194. Factors that are to be considered in determining whether piercing is appropriate are "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 484-85. The party seeking to pierce the corporate veil is required to "state facts showing a reason" to do so. *Shenango Inc. v. Am. Coal Sales Co.*, No. 06-149, 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007). "[S]imply alleging . . . ownership and control over the corporation[] is irrelevant and immaterial." *Id.* (citations omitted).

Woodbridge is a corporation established in compliance with Pennsylvania's Business Corporation Law of 1988. (Articles of Incorporation 1, Defs.' Summ. J. Br. Ex B.) The three individuals who are listed in the Articles of Incorporation as incorporators are Zettlemoyer, Graff, and Filippini. (*Id.* at 2.)[8] Because Woodbridge is a duly registered corporation, its

---

[8] Emidio Filippini is now deceased. His widow Helen Filippini has succeeded to his share of the corporation. (Defs.' Answer ¶ 8.)

shareholders and officers are presumed to be entitled to the liability protection of the corporate form. In order to determine whether Plaintiff should be permitted to pierce the corporate veil, we look for evidence of the above mentioned factors.

Plaintiff has provided no evidence of "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, or absence of corporate records." *Pearson*, 247 F.3d at 484-85. Similarly, Plaintiff has not provided any evidence suggesting that Woodbridge is "merely a facade for the operations of the dominant stockholder[s]." *Id*. at 485. There is no basis for piercing the corporate veil here.[9]

Plaintiff also claims that Filippini, Zettlemoyer, and Graff are liable because they registered Woodbridge Golf Club, Inc. as a distinct entity to be operated under the fictitious name Woodbridge Golf Club. (Resp. 12.) Pennsylvania's Fictitious Names Act, 54 Pa. Cons. Stat. § 301 *et seq.*, requires certain organizations to register names that they wish to publicly use. Such names include "any assumed or fictitious name, style or designation other than the proper name of the entity using such name." 54 Pa. Cons. Stat. § 302. "The use of a fictitious name

---

[9] The Supreme Court of Pennsylvania has determined that, "[t]he corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." *Sams v. Redev. Auth. of City of New Kensington*, 244 A.2d 779, 781 (Pa. 1968). As with federal law, there is "a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). "Piercing the corporate veil is admittedly an extraordinary remedy preserved for cases involving exceptional circumstances." *Village at Camelback Property Owners Ass'n Inc. v. Carr*, 538 A.2d 528, 533 (Pa. Super. 1988). Factors that are considered for piercing include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." *Lumax*, 669

does not create a separate legal entity, but is merely descriptive of a person or corporation who does business under another name." *Burlington Coat Factory of Pa., LLC v. Grace Const. Mgmt. Co., LLC*, 126 A.3d 1010, 1024 (Pa. Super. 2015).  Clearly, Filippini, Zettlemoyer, and Graff did not create a separate entity by merely registering a fictitious name.  They are entitled to the benefits of the corporate form.  We will grant Defendants' Motion for Partial Summary Judgment with respect to the liability of Defendants Filippini, Zettlemoyer, and Graff.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment will be denied as to Count I of the Amended Complaint.  The Motion will be granted as to the personal liability of Defendants Filippini, Zettlemoyer, and Graff.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

---

A.2d at 895.