IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN PARKS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-0562 |
| WOODBRIDGE GOLF CLUB, INC., | : | |
| ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                          **MARCH 24 , 2017**

Presently before the Court is Plaintiff's Motion for Reconsideration of the Court's July

22, 2016 Order Dismissing Claims Against Defendants Filippini, Zettlemoyer, and Graff. (ECF

No. 26.) For the following reasons, Plaintiff's Motion will be denied.

**I.    BACKGROUND**[1]

Plaintiff Megan Parks filed a complaint against her former employer, Woodbridge Golf

Club, Inc.; her former supervisor, Thor Shaffer; and Woodbridge's three corporate officers:

Helen Filippini, Carl Zettlemoyer, and Marlowe Graff. Plaintiff alleged that when she was

employed from April 2008 through November 2008 and from May 2009 through July 25, 2009,

she was subjected to a hostile work environment. (July 22 Mem. 1-2.) Plaintiff claims that

Shaffer groped her, repeatedly attempted to restrain her, and discussed with her a series of lewd

topics, including soliciting sexual favors and making inappropriate remarks about her body. *Id.*

Plaintiff also alleges that Filippini, Zettlemoyer, and Graff were responsible for the hostile work

environment and discriminatory employment practices at the golf club. (*Id.* at 2.) Plaintiff

---

[1] A more detailed factual and procedural background can be found in the Court's July 22,
2016 Memorandum granting in part and denying in part Defendants' motion for partial summary
judgment. (July 22 Mem., ECF No. 23.)

asserted the following claims against all Defendants:  gender discrimination and hostile work environment under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2, (Count I); violations under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.*, (Count II); intentional infliction of emotional distress (Count III); assault and battery (Count IV); and false imprisonment (Count V).

On July 22, 2016, we granted summary judgment in favor of Defendants Filippini, Zettlemoyer, and Graff.  (July 22 Mem.; July 22 Order, ECF No. 24.)  We concluded that Plaintiff had failed to present any evidence justifying piercing the corporate veil to hold these shareholders/corporate officers liable.  (July 22 Mem. 10-13.)  On August 10, 2016, Plaintiff filed this Motion to Reconsider the July 22, 2016 Order.  (Pl.'s Mot., ECF No. 26.)  On August 22, 2016, Defendants Filippini, Zettlemoyer, and Graff responded to the Motion.  (Defs.' Resp., ECF No. 28.)

## II.    LEGAL STANDARD

A party is entitled to have a court reconsider a judgment in the following circumstances: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Interdigital Comm., Corp. v. Fed. Ins. Co.*, 403 F. Supp. 2d 391, 392 (E.D. Pa. 2005).  Motions to reconsider will only be granted for "compelling reasons . . . not for addressing arguments that a party should have raised earlier."  *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) (internal quotation marks omitted).  "A motion to reconsider judgment is not a means to reargue matters already argued

and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Gavaghan v. Said*, No. 12-3689, 2013 WL 3367267, at *1 (E.D. Pa. July 3, 2013) (internal quotation marks omitted and citation omitted); *see also Mash v. Twp. of Haverford Dep't of Codes Enforcement*, No. 06-4479, 2007 WL 2692333, at *3 (E.D. Pa. Sept. 11, 2007) ("It is improper on a motion for reconsideration to ask the court to rethink what it has already thought through-rightly or wrongly.") (citations omitted).  "Because of the courts' interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Tomasso v. Boeing Co.*, No. 03-4220, 2007 WL 2458557, at *2 (E.D. Pa. Aug. 24, 2007) (citation omitted).[2]

## III.   DISCUSSION

Plaintiff requests that the Court reconsider its July 22, 2016 Order on the basis of alleged new evidence.  In support of this request, Plaintiff submits an August 2, 2016 letter that was sent to her counsel by Defendants' counsel.  The letter states:

> Please be advised that Woodbridge Golf Club, Inc. has no assets and has been effectively dissolved.  The bank previously initiated foreclosure on all assets of the corporation and the property and personalty were sold.  We are asking that you withdraw the action based upon the Court's order dismissing the other parties.  If we continue to participate in any trial, we will seek all attorneys' fees since this matter is for all intents and purposes non-justiciable.[3]

---

[2]  Plaintiff does not specify whether she brings her Motion to Reconsider under Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure.  However, "[t]he character of a motion is determined by its function . . . ." *United States v. Contents of Accounts Numbers at Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 987 (3d Cir. 1992) (citations omitted). Given that Plaintiff's Motion is based on new evidence, and "Rule 59(e) does not permit a party to present additional evidence as a basis for relief," *id.*, we will evaluate Plaintiff's Motion under Rule 60(b).

[3]  Research through Westlaw reveals that the property was sold in October 2014.

(Aug. 2, 2016 Ltr., Pl.'s Mot. Ex. D.)  Defendants assert that the letter was sent to Plaintiff as a mere courtesy to advise Plaintiff that continued proceedings against the corporate Defendant would be futile.  (Defs.' Resp. 7.)

Plaintiff argues that this letter constitutes new evidence, which was previously unavailable during the time of discovery.  Plaintiff argues that this new evidence supports piercing the corporate veil so that her claims against the individual Defendants—Filippini, Zettlemoyer, and Graff—should survive summary judgment.  In their Brief in support of their Motion for Partial Summary Judgment, Defendants argued, *inter alia*, that Plaintiff had failed to plead facts or a cause of action that would justify piercing the corporate veil to impose personal liability on the corporate officers, Filippini, Zettlemoyer, and Graff.  Plaintiff responded that she "is not attempting to pierce 'the corporate veil.'"  (Pl.'s SJ Resp. ¶ 3, ECF No. 20.)

In any event, in the July 22 Memorandum, notwithstanding Plaintiff's failure to put forth any evidence to justify piercing the corporate veil, we discussed the law in the Third Circuit concerning the piercing of corporate veils as follows:

> "A duly organized business corporation enjoys an identity separate and apart from its stockholders, directors, and officers." *Gottlieb v. Sandia Amer. Corp.*, 452 F.2d 510, 514 (3d Cir. 1971).  As such, individuals do not bear personal liability for the malfeasance or torts of a corporation.  *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001).  "In the absence of extraordinary circumstances, a court will not disregard the corporate fiction [to] hold a stockholder liable for the torts of the corporation." *Zubik v. Zubik*, 384 F.2d 267, 273 n.14 (3d Cir. 1967).  Piercing the corporate veil "is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003).  Courts generally apply this remedy in order to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Pearson*, 247 F.3d at 484-85 (3d Cir. 2001).

> The Third Circuit has not created a rigid test that courts should use when determining whether the corporate veil should be pierced.  *Lutyk*, 332 F.3d at 194.

4

> Factors that are to be considered in determining whether piercing is appropriate are "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson*, 247 F.3d at 484-85.  The party seeking to pierce the corporate veil is required to "state facts showing a reason" to do so.  *Shenango Inc. v. Am. Coal Sales Co.*, No. 06-149, 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007).  "[S]imply alleging . . . ownership and control over the corporation[] is irrelevant and immaterial."  *Id.* (citations omitted).

(July 22 Mem. 10-11.)

Plaintiff now contends that the August 2 letter reveals that Woodbridge was "insolvent and possibly undercapitalized" (Pl.'s Mot. 8), which justifies piercing the corporate veil. Defendants respond that Plaintiff's Motion is nothing more than an attempt to relitigate a claim already rejected by the Court, after realizing that any judgment against Woodbridge would be uncollectible.  Defendants further contend that the August 2 letter does not constitute new evidence because it does not show that Woodbridge was insolvent or undercapitalized.

The August 2 letter fails to demonstrate that Woodbridge was undercapitalized. Undercapitalization occurs when a corporation lacks the capital needed to carry out its normal business function and meet attendant risks.  *See generally* William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.33 (2002).[4]  A "corporation that was adequately capitalized when formed, but which subsequently suffers financial reverses is not undercapitalized." *Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 196-97 (3d Cir. 2003) (quoting Fletcher, *supra*, § 41.33).  The August 2 letter establishes only that Woodbridge may have been unable to pay its debts, which prompted

---

[4] Fletcher's encyclopedia on corporate law is often cited by the Third Circuit and is a reputable source.  *See, e.g.*, *In re Ressler*, 597 F. App'x 131, 135 n.5 (3d Cir. 2015); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 343 (3d Cir. 2013); *Pharmacia Corp. v. Motor Carrier Servs. Corp.*, 309 F. App'x 666, 672 (3d Cir. 2009).

foreclosure proceedings.  The letter does not reveal any evidence to suggest that Woodbridge was inadequately funded.  Determining whether a corporation is undercapitalized is "highly factual and may vary substantially with the industry, company, size of the debt, account methods employed, and like factors."  *Id.* (citation omitted).  Evidence of a failure to pay debts alone is not evidence of gross undercapitalization.  *See id.* at 196-97 (finding that the district court erred when it concluded that the corporation was grossly undercapitalized by relying solely on its insolvency and the ratio of capital stocks to shareholder loans); *see also Local Union No. 98, Int'l Bhd. of Elec. Workers v. Garney Morris, Inc.*, No. 03-5272, 2004 WL 1151722, at *3 (E.D. Pa. May 24, 2004) (finding that there was no evidence of undercapitalization where the plaintiff pointed only to the defendant corporation's possible insolvency).

In addition, Plaintiff's contention that the August 2 letter reveals Woodbridge's insolvency is highly speculative.  Insolvency refers to the inability to pay debts as they mature. *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1064 (3d Cir. 1992) (citing *Larrimer v. Feeney*, 192 A.2d 351, 353 (Pa. 1963)).  The August 2 letter states that Woodbridge underwent foreclosure, not that it was insolvent during the course of Plaintiff's litigation.  In any event, even if we were to assume that Woodbridge was insolvent, which ultimately led to the foreclosure, this alone is not sufficient to pierce the corporate veil.  *See Lutyk*, 332 F.3d at 195 (stating that "insolvency, without more, is not a factor which can justify piercing the corporate veil").  Veil-piercing is only appropriate to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime."  *Pearson*, 247 F.3d at 484 (quoting *Zubik*, 384 F.2d at 273); *see also Am. Bell Inc. v. Fed'n of Tel. Workers of Pa.*, 736 F.2d 879, 886 (3d Cir. 1984) (noting that courts may only "pierce the veil in specific, unusual circumstances").  Plaintiffs have offered no facts—and the

August 2 letter reveals none—to demonstrate that Woodbridge or its corporate directors engaged in fraud or illegal conduct, or otherwise disregarded recognition of the corporate form.[5]

Plaintiff had every opportunity to seek discovery and make arguments in support of a corporate veil-piercing theory during the course of this litigation. The Amended Complaint includes no allegations related to piercing the corporate veil. Indeed, as noted above, in her response to Defendants' motion for partial summary judgment, Plaintiff specifically represents that she is "not attempting to pierce the corporate veil." (Pl.'s SJ Resp. ¶ 3.) Motions for reconsideration are not tools for asserting new theories of liability. *See Wallace v. Doe*, 512 F. App'x 141, 144 (3d Cir. 2013) (affirming denial of motion to reconsider where plaintiff "attempted to introduce new theories of liability, all of which were available to him before he filed this motion"); *Dempsey v. Bucknell Univ.*, No. 11-1679, 2015 WL 999101, at *3 (M.D. Pa. Mar. 6, 2015) ("To the extent that Plaintiff is now attempting to argue new theories of liability under his fraud and breach of contract counts, a motion for reconsideration is not the appropriate medium to do so.").

---

[5] Plaintiff's argument would also fail under Pennsylvania law, where "there is a strong presumption . . . against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). Pennsylvania cases reveal that gross undercapitalization or insolvency must be one of several factors present to pierce the veil. *See, e.g.*, *Accurso v. Infra-Red Servs., Inc.*, 169 F. Supp. 3d 612, 617 (E.D. Pa. 2016) (applying Pennsylvania law and finding that the corporate veil could be pierced where corporate formalities were not observed, meetings were not held, bylaws were not generated, minutes were not kept, dividends were not paid, and capital contributions were not made); *Lomas v. Kravitz*, 130 A.3d 107, 128 (Pa. Super. Ct. 2015) (finding that the trial court correctly pierced the veil where it was shown that the corporation was undercapitalized, corporate formalities were not adhered to, there was extensive intermingling of funds, and the corporation was used to perpetuate a fraud); *Com., Dep't of Envtl. Res. v. Peggs Run Coal Co.*, 423 A.2d 765, 768-69 (Pa. Commw. Ct. 1980) (finding that the plaintiff sufficiently pled a cause of action to pierce the veil where it was alleged that the defendant corporation failed to adhere to corporate formalities, there was substantial intertwining of personal and corporate affairs, and undercapitalization was present).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration of the Court's July 22, 2016 Order Dismissing Claims Against Defendants Filippini, Zettlemoyer, and Graff will be denied.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**